# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**SHEETZ, INC.,**
**Employer Below, Petitioner**

**FILED**

**May 5, 2017**
**RORY L. PERRY II, CLERK**
**SUPREME COURT OF APPEALS**
**OF WEST VIRGINIA**

**vs.)    No. 16-0382** (BOR Appeal No. 2050865)
(Claim No. 2013008943)

**DEBRA THARP,**
**Claimant Below, Respondent**

### MEMORANDUM DECISION

Petitioner Sheetz, Inc., by Jillian L. Moore, its attorney, appeals the decision of the West Virginia Workers' Compensation Board of Review. Debra Tharp, by Christopher J. Wallace, her attorney, filed a timely response.

The issue on appeal is two-part. The first issue is whether the valgus deformity of the right knee should be held a compensable component of the claim, and the second is whether the request for consideration of unicompartmental arthroplasty should be granted. This appeal originated from the February 26, 2015, and June 17, 2015, claims administrator's decisions which denied the request to add the valgus deformity to the claim and denied the request for the consultation for consideration of arthroplasty, respectively. In its October 7, 2015, Order, the Workers' Compensation Office of Judges reversed the decisions. The Board of Review's Final Order dated March 25, 2016, affirmed the Order of the Office of Judges. The Court has carefully reviewed the records, written arguments, and appendices contained in the briefs, and the case is mature for consideration.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Debra Tharp, an assistant manager, injured her right knee in the course of her employment on September 26, 2012, when she slipped on a trash can lid and fell. Ms. Tharp finished her shift and reported to the hospital the next day. A physical examination revealed

1

decreased extension of the right knee and some soft tissue swelling. X-rays revealed mild to moderate degenerative changes in both knees. The clinical impression was knee sprain and contusion of the knee. The claims administrator held the claim compensable for contusion of the right knee and sprain of the right leg on October 3, 2012.

On October 4, 2012, Ms. Tharp underwent an MRI of her right knee, which revealed a complex tear of the lateral meniscus, tri-compartmental osteoarthritis, and a high-grade sprain of the anterior cruciate ligament. Ms. Tharp sought treatment from John Buschman, D.O. Dr. Buschman performed a right knee arthroscopy with extensive debridement, chondroplasty of the femoral condyle, and a partial lateral meniscectomy on October 22, 2012. The post-operative diagnosis was right knee lateral meniscal tear, sprained anterior cruciate ligament, and chondromalacia of the medial femoral condyle.

Ms. Tharp continued to suffer pain from her right knee and sought treatment from George Bal, M.D. Dr. Bal performed a physical examination on April 8, 2013, which revealed a valgus deformity of the right knee. His diagnosis also included right-sided lateral compartment osteoarthritis. Dr. Bal opined that Ms. Tharp's best treatment option was a lateral unicompartmental arthroplasty, for which he recommended she see Brian Hamlin, M.D. On August 5, 2013, Dr. Bal examined Ms. Tharp and determined that she had some degenerative changes in her right knee. Ms. Tharp was functioning well without medical visits prior to the work-related injury, which Dr. Bal believed had significantly exacerbated her pre-existing knee condition.

On August 26, 2013, Ms. Tharp underwent an independent medical evaluation performed by Ghala Kazi, M.D. Dr. Kazi performed a physical examination which revealed fifteen degrees of valgus deformity in the right knee and zero degrees in the left knee. Dr. Kazi opined that Ms. Tharp's request for the lateral unicompartmental arthroplasty was related to her pre-existing osteoarthritis, which he believed was unrelated to the compensable injury. However, Dr. Kazi did believe the valgus deformity was attributable to the compensable injury and determined Ms. Tharp had 11% impairment. On September 19, 2013, Rebecca Thaxton, M.D., performed a record review and disagreed with Dr. Kazi's impairment rating. Dr. Thaxton stated that Dr. Kazi combined two categories under the American Medical Association's *Guides to the Evaluation of Permanent Impairment* (4th ed. 1993). Rather than combining the two ratings, Dr. Thaxton stated the higher rating of the two categories should have been used and the actual impairment would be 8% attributed to the valgus deformity.

On January 29, 2014, Ms. Tharp testified in a hearing before the Office of Judges. Ms. Tharp testified that she had previously experienced some pain in her right knee while undergoing treatment for an injury sustained to her left knee. She believed this pain was due to favoring her left knee during its treatment. She also testified that she had not sustained any prior injuries to her right knee and that she had not needed medical treatment for her right knee after her left knee problems had resolved two years prior.

On May 14, 2014, Ms. Tharp underwent a second independent medical evaluation which was performed by Joseph Grady, M.D. Dr. Grady noted that while Ms. Tharp had some pre-

existing degenerative changes in her right knee, she denied any prior symptoms or previous treatment. Dr. Grady determined Ms. Tharp had reached maximum medical improvement for the compensable injury of a knee contusion and sprain. Dr. Grady opined that Ms. Tharp had 8% impairment due to the valgus angulation deformity of the knee. Ms. Tharp denied any deformity prior to the injury. Dr. Grady did find a slight deformity in the left knee, but it did not fall into a ratable category and could not be apportioned. He believed the lateral unicompartmental arthroplasty was the best treatment for the abnormalities in Ms. Tharp's right knee. On June 10, 2014, James Dauphin, M.D., performed a physician review. Dr. Dauphin disagreed with Dr. Grady's report and concluded he incorrectly attributed the valgus deformity to the compensable injury. Dr. Dauphin believed the deformity was due to pre-existing osteoarthritis and determined Ms. Tharp suffered from 1% impairment.

On October 17, 2014, the Office of Judges denied Ms. Tharp's request for a consultation with Dr. Hamlin, stating that her claim was only compensable for a right knee contusion and sprain, which Dr. Grady determined was completely resolved. Although Dr. Bal opined the work injury significantly exacerbated Ms. Tharp's osteoarthritis, it had not been added as a compensable component of the claim and was thus denied. Dr. Bal requested that right knee sprain, aggravation of pre-existing osteoarthritis, and valgus deformity of the right knee be added as compensable components of the claim on January 7, 2015.

On January 27, 2015, Dr. Thaxton was asked to perform a review and address Dr. Bal's request to add right knee sprain, aggravation of pre-existing osteoarthritis, and valgus deformity of the right knee to the claim. Dr. Thaxton opined that the sprain was already compensable and recommended that the other two conditions not be added to the claim. The claims administrator added right knee sprain and aggravation of pre-existing osteoarthritis as compensable diagnoses of the claim on February 26, 2015. The addition of the valgus deformity was denied.

On April 8, 2015, Randall Short, D.O., was asked to perform a review and address Dr. Bal's request for a consultation for unicompartmental arthroplasty of Ms. Tharp's right knee. Dr. Short noted that Ms. Tharp clearly had pre-existing degenerative arthritis in the right knee. He noted Dr. Dauphin suggested the valgus deformity was secondary to the arthritis and thus the deformity should not be added to the claim. Dr. Short attributed the request for the consultation to the valgus deformity and because it was pre-existent due to degenerative changes, he recommended the consultation be denied.

Ms. Tharp underwent a third independent medical evaluation performed by Christopher Martin, M.D., on April 20, 2015. Dr. Martin believed the valgus deformity was a pre-existing condition. He could not think of any way in which the surgery performed by Dr. Buschman would cause the deformity, which is a chronic condition and develops slowly over time. Dr. Martin viewed the x-ray taken the day after Ms. Tharp's injury. The x-ray showed a valgus deformity of the same degree as the one noted at Dr. Martin's evaluation. Therefore, he believed the valgus deformity was present prior to the injury. Dr. Martin concluded that Ms. Tharp suffered 1% impairment and opined that while the consultation for lateral unicompartmental arthroplasty was clinically appropriate, it was not medically necessary as a result of the compensable injury.

3

The claims administrator denied the request for a consultation for lateral unicompartmental arthroplasty on May 12, 2015, and the Select Street Grievance Board denied the request on June 16, 2015. In support of its conclusion, the Board noted Dr. Kazi opined Ms. Tharp had reached maximum medical improvement and any further treatment would be aimed at pre-existing degenerative arthritis.

On October 7, 2015, the Office of Judges reversed the February 26, 2015, and June 17, 2015, claims administrator's decisions. The Office of Judges determined that Ms. Tharp had satisfactorily proven that the valgus angulation deformity in her right knee was causally related to the compensable injury. The Office of Judges noted that the deformity was first diagnosed on April 8, 2013, by Dr. Bal, who believed it to be attributable to the compensable injury. His findings were corroborated by Dr. Grady. The Office of Judges found that the opinions of Dr. Bal and Dr. Grady are substantiated by the medical record, which clearly documents the deformity after the injury. However, at no point prior to the injury does the medical record indicate Ms. Tharp suffered from the valgus deformity. The Office of Judges pointed out that of the doctors opining the deformity was pre-existing, only one had the opportunity to physically examine Ms. Tharp. The weight of the evidence supported a finding that the right valgus deformity is causally related to the compensable injury and thus the Office of Judges added it as a compensable component of the claim. Regarding the consultation for consideration of unicompartmental arthroplasty, the Office of Judges determined that both Dr. Bal and Dr. Grady determined it was the best course of action to treat Ms. Tharp's right knee symptoms and structural abnormalities. Dr. Short and Dr. Martin opined that the requested treatment was directed at treating the valgus deformity and pre-existing osteoarthritis and thus recommended against the treatment. However, the Office of Judges noted that both diagnoses were now compensable components of the claim and approved the requested consultation as it was reasonably required for treatment of the compensable conditions of the claim. The Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed its Order on March 25, 2016.

We agree with the reasoning and conclusions of the Office of Judges as affirmed by the Board of Review. The medical evidence does not show the valgus deformity was pre-existing. The deformity was first diagnosed in 2013, several months after the injury. Additionally, the consultation for the arthroplasty is to treat two compensable components of the claim. The evidentiary record supports the addition of the valgus deformity to the claim and the approval of the requested consultation for consideration of lateral unicompartmental arthroplasty.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

4

**ISSUED: May 5, 2017**

**CONCURRED IN BY:**
Chief Justice Allen H. Loughry II
Justice Robin J. Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker